

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2008

# Ren v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4877

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ren v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1418.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1418

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4877

_____

YAOYA REN,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A98-347-407
Immigration Judge: Honorable Annie S. Garcy

_____

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2008

_____

Before: BARRY, JORDAN and HARDIMAN, Circuit Judges

(Opinion Filed: March 19, 2008)

_____

OPINION

_____

BARRY, Circuit Judge

       Petitioner Yaoya Ren, a native and citizen of China, seeks review of a final order

of the Board of Immigration Appeals ("BIA") dismissing her appeal from an Immigration

Judge's ("IJ") order denying asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. Because the BIA adopted the IJ's findings and discussed some, but not all, of the bases underlying those findings, we may review both the BIA's and the IJ's opinions. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). We will deny the petition for review.

I.

Ren illegally entered the United States on June 10, 2004, apparently by wading across the Rio Grande river; she was arrested and detained by immigration officials in southern Texas later that same day. Upon questioning, she explained through an interpreter that she came to the United States to escape persecution by the Chinese government for engaging in pro-Falun Gong activities. She was served with a Notice to Appear charging her with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act as "an alien present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i). She conceded the charge, but applied for asylum, withholding of removal, and protection under the CAT. Her application, however, made no mention of Falun Gong; it alleged persecution as a result of China's family planning policy.

The IJ conducted a removal hearing on April 1, 2005, with Ren as the only witness. Her testimony was as follows. She married her husband, Xiangkui Lin, in a traditional ceremony on January 8, 1995. The couple attempted to register their marriage

2

with the government in October 1995, but a mandatory prenuptial physical examination revealed that Ren, who was only 19 years old at the time, was pregnant. Family planning officials informed the couple that Ren's pregnancy was unlawful and immediately brought her to the local hospital where a doctor aborted the pregnancy against her will and implanted an intrauterine device ("IUD") to prevent her from conceiving another child in violation of the policy. Ren and her husband successfully registered their marriage on November 18, 1995.

Ren testified that she had the IUD removed by a private doctor within two months of its insertion and quickly became pregnant again. She went into hiding and gave birth to a son, Ming Lin, on November 5, 1996. Ren successfully registered her son with the government but family planning officials fined her 6000 yuan for having a child before the legal child-bearing age of 23. She paid the fine within six months.

Ren's husband fled China alone in 1999 and sought asylum in the United States. An immigration judge rejected his claim and ordered him removed in 2000, but he has nonetheless remained here. Ren claims to have reunited with her husband after she arrived in the United States in 2004 and became pregnant during the pendency of her removal proceedings.[1] She argues that if she is forced to return to China, she will be sterilized and fined for having a second child in violation of the family planning policy.

---

[1] Ren submitted a birth certificate issued by the City of New York dated October 20, 2005, indicating that she gave birth to a daughter, Jody Lin, on October 3, 2005. (App. at 30.)

Ren testified that she agreed to pay a smuggler $65,000 to get her from China to the United States. She admitted to fabricating the story about being a Falun Gong adherent, but claimed that she did so only because the smuggler insisted that she tell that story if she was caught. She conceded that the smuggler was not present when she made her initial statement to immigration officials.

Ren submitted several pieces of documentary evidence in support of her claim, including a 1999 household registration booklet showing a boy named Ming Lin (born on November 5, 1996) living in her household; a receipt showing payment of a 6000 yuan fine for "giving birth too early"; medical records from the Fuzhou City Hospital documenting an abortion and insertion of an IUD on October 6, 1995; notarial certificates evidencing the registration of her marriage to Xiangkui Lin and the birth of Ming Lin; and a letter signed by "Ren Yaoya's mother" explaining that Ren had been forced to abort a pregnancy while she was in China and asking the United States government to protect her daughter from torture.

The IJ rejected Ren's applications in a written opinion and order dated April 14, 2005. The IJ found that "several material things . . . defeat her credibility or believability" (App. at 56) and ruled, in the alternative, that even if her story was credible, her testimony did not establish that "her fear of sterilization for having had more than one child is reasonable or well-founded." (Id. at 63.) Ren appealed the IJ's decision to the BIA, but the BIA dismissed the appeal in an October 30, 2006 opinion and order, finding

4

that the record supported the IJ's adverse credibility determination and agreeing with the IJ's alternative holding that even if her story was credible, she had "not demonstrated a well-founded fear of persecution in China based on the birth of her second child in the United States." (Id. at 4.) This timely petition for review followed.

II.

An alien may qualify for political asylum if he or she can demonstrate an unwillingness or inability to return to his or her homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Withholding of removal may be granted upon a showing that it is more likely than not that the applicant will be subjected to persecution if he or she is deported. *Toure v. Attorney General*, 443 F.3d 310, 317 (3d Cir. 2006). To qualify for relief under the CAT, the applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). Each ground for relief requires, at a minimum, credible testimony. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

Credibility determinations are factual findings reviewed for substantial evidence. "[T]he substantial evidence standard of review is extremely deferential, setting a 'high hurdle by permitting the reversal of factual findings only when the record evidence would *compel* a reasonable factfinder to make a contrary determination.'" *Chen v. Ashcroft*, 376

5

F.3d 215, 223 (3d Cir. 2004) (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003)).

III.

We have carefully reviewed the record and conclude that the BIA's decision to affirm the IJ's adverse credibility determination was supported by substantial evidence.

Ren argues that the IJ placed undue weight on her initial statement to immigration officials that she feared persecution in China based on her Falun Gong affiliation. We disagree. The IJ did not, as Ren suggests, discredit her testimony based on a trivial difference between the initial interview and her testimony at the hearing; rather, the IJ discredited her testimony because the statements were wholly inconsistent. Although we have held that an IJ may not consider minor inconsistencies between the initial interview and the hearing before the IJ to sustain an adverse credibility determination, *Balasubramanrim v. INS*, 143 F.3d 157, 164 (3d Cir. 1998), we have also held that an IJ may reasonably find a lack of credibility where, as here, the stories are "markedly different." *Chen*, 376 F.3d at 224. Ren tried to explain the inconsistency by testifying that she merely parroted what a smuggler had ordered her to say if she was caught, but the IJ was unconvinced because, not surprisingly, the smuggler was not present at the interview. It was reasonable for the BIA and the IJ to discredit Ren's testimony on this ground.

The BIA and the IJ also reasonably concluded that inconsistencies and omissions

6

in several documents submitted by Ren to corroborate her testimony actually served to further undercut, rather than rehabilitate, her credibility. As both the BIA and the IJ noted in their opinions, Ren testified that she paid a 6000 yuan fine within six months of November 5, 1996, the date on which she claims her son was born, but the receipt supplied by Ren is dated December 11, 1997. Lin also claims to have been married in 1995, but a 1999 household registry booklet listed her as still living with her parents and recorded her marital status as "single." This document calls into question the validity of the notarial certificate substantiating her 1995 marriage to Xiangkui Lin and, by extension, the notarial certificate attesting that she and Xiangkui Lin are the parents of Ming Lin. Other documents are missing important information, suggesting that they might have been crafted solely for asylum purposes. For example, no patient name is listed on the medical report supposedly evidencing Ren's 1995 forced abortion, and the letter from her mother is missing basic information (e.g., the names of Ren's son and husband, and the date of Ren's abortion) that one would reasonably have expected her to include.

Ren argues that the IJ improperly discredited her claim based on her husband's failure to testify on her behalf at the hearing, but given the above-mentioned inconsistencies and omissions, we are not persuaded. We agree with Ren that credibility determinations must be made independent of whether the applicant has provided evidence to corroborate his or her claim. *See Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir.

2001). However, in cases such as this where the IJ has reason to question the truth of the applicant's testimony, the IJ may reasonably require the applicant to corroborate his or her testimony. Ren failed to do so.

Our review of the administrative record as a whole satisfies us that the BIA's adverse credibility determination was supported by substantial evidence. Together, many of the inconsistencies cast serious doubt on whether Ren was forced to have an abortion, whether she is a married woman, and whether she has a son in China. All of these questions go to the heart of her claim. No reasonable factfinder would be compelled to reach a conclusion different than that reached by the BIA.

IV.

We will deny the petition for review.

8